**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TEMPLE UNIVERSITY HOSPITAL, INC., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GROUP HEALTH, INC.,OXFORD | : | |
| HEALTH PLANS, INC., and | : | |
| MULTIPLAN, INC., | : | |
| Defendants | : | NO. 05-102 |

**MEMORANDUM AND ORDER**

Gene E.K. Pratter, J.                                                    July 13, 2006

        Temple University Hospital (Temple) is a substantial regional health system that seeks to

recover $10,950,162.12, plus interest and costs, for the organ transplant treatment of Fred

Tremarcke from September 6, 2002 to November 26, 2003 and again from March 24, 2004 to

April 28, 2004 ("Tremarcke claim").  Temple also seeks $103,753.96 for the care extended to

Suzanne Griffin from January 14, 2003 through January 17, 2003 ("Griffin claim").  Temple has

sued the three health insurers or related plan administrators, namely Oxford Health Insurance,

Inc., (Oxford),[1] Group Health, Inc. (GHI), and MultiPlan, Inc. (MultiPlan), that Temple asserts

are obligated to reimburse Temple for the treatment of Mr. Tremarcke and Ms. Griffin.  GHI and

Oxford filed motions for summary judgment, which MultiPlan has adopted.[2]  Temple opposed

the motions, and all counsel ably presented oral argument.  Because the Court concludes (1) that

———————————————

[1]     Temple incorrectly named Oxford as "Oxford Health Plans, Inc." in the Amended
Complaint.

[2]     MultiPlan filed a motion stating "MultiPlan, Inc. ("Movant") respectfully Adopts and
Incorporates by Reference Herein the Motions for Summary Judgment and Supporting
Memorandum filed on behalf of Group Health, Inc. (Docket No. 53) and Oxford Health
Insurance, Inc. (Docket No. 65), dismissing Plaintiffs claims for the reasons set forth at length
therein."

Temple's claims are preempted by the Employee Retirement Income Security Act of 1974

(ERISA), 29 U. S. C. § 1001 et seq., and (2) that Temple has failed to acquire a valid assignment

in order to have standing to sue under ERISA, the motions shall be granted.

## I.      FACTUAL BACKGROUND

The following factual recitation is drawn from the parties' submissions to the Court, as

well as uncontested the facts from the record.

### A.      The UWF Plans

GHI and the United Welfare Fund ("UWF") entered into a group contract ("GHI's UWF

Plan") to provide health insurance benefits to UWF participants who were members of the

United Service Workers of America labor union.  GHI's UWF Plan provided for different

payment schedules for participating and non-participating healthcare providers.  Under GHI's

UWF Plan, participating providers are medical practitioners or facilities that agreed to accept

GHI's scheduled or negotiated rates as reimbursement for services rendered to covered

members; non-participating providers are defined as medical providers or facilities that do not

have an agreement with GHI to limit charges to its subscribers.  Oxford also entered into a

Group Enrollment Agreement which became effective in  March 2003, with the UWF and issued

to each UWF insured an Oxford Certificate of Coverage and Summary of Benefits which

outlines the terms and conditions of that policy.  (Together, the Group Enrollment Agreement

and Certificate of Benefits are referred to as "Oxford's UWF Plan.")

### B.      The Discount and Access Agreements

MultiPlan is a preferred provider organization ("PPO") that maintains a network of

health care facilities and providers through direct, separate agreements it enters into with such

hospitals and health care providers, pursuant to which these entities agree to accept discounted

2

fees for services in exchange for the right to participate in the PPO network.  In 1998, Temple and MultiPlan entered into a "Prompt Payment and Discount Agreement" (Discount Agreement) by which Temple became a MultiPlan provider within the Multiplan network.  The Discount Agreement provides that "[MultiPlan] shall reimburse [Temple] 90% of billed charges within thirty (30) days of receipt of claim or 100% of billed charges shall be due."

Both GHI and Oxford entered into Access Agreements with MultiPlan which enabled GHI and Oxford to access MultiPlan's network of healthcare facilities and contract rates. Oxford and MultiPlan entered into their Access Agreement entitled "HMO Cost Savings Agreement" in 1992 and subsequently amended the agreement seven times between September 2002 to January 2004.  The First Amendment to the Access Agreement with Oxford acknowledges that "Client [Oxford] has the right to access [MultiPlan's] network of health care providers . . . ."  GHI entered into its Access Agreement with MultiPlan in 1997, and that Agreement states that "GHI shall have the right to access [MultiPlan's] Contract Rates on Behalf of its Participants."

To summarize the contractual relationships between and among the parties, Temple has a Discount Agreement with MultiPlan, and MultiPlan has Access Agreements with GHI and Oxford which allow GHI and Oxford to access the discount rates structure that Temple provides to Multiplan.  There are no contracts directly between Temple and GHI or between Temple and Oxford.

### C.    Temple's Claims

#### 1.    The Tremarcke Claims

Temple seeks payment for Mr. Tremarcke's medical expenses from September 6, 2002 through March 31, 2003, from GHI, and payment for Mr. Tremarcke's expenses incurred from

April 1, 2003 to November 26, 2003 from either GHI or Oxford, and finally payment for expenses from March 24, 2004 through April 28, 2004 from Oxford.  Temple asserts that MultiPlan is jointly and severally liable for the Tremarcke claims during each time period as well.  Although not specified by the parties, the medical treatment and services rendered to Mr. Tremarcke appear to relate primarily to an organ transplant.  Transcript of Oral Argument on Motion to Dismiss at 44-45, Nov. 2, 2005.

GHI denied the claims submitted by Temple for Mr. Tremarcke's treatment, contending that Mr. Tremarcke was improperly enrolled in the GHI UWF Plan because he failed to satisfy eligibility criteria set forth in the applicable UWF Plan documents.  Mr. Tremarcke and the UWF are currently contesting GHI's determination of ineligibility in a separate lawsuit pending in the Eastern District of New York, captioned John Ames and Michael Pantony, as Trustees of the United Welfare Fund-Welfare Division, Fred Tremarcke, and the United Welfare Fund-Welfare Division v. Group Health Incorporated, Civil Action No. 03-5055.  Oxford declined its right to use the Access Agreement when it received bills from Temple for treatment of Mr. Tremarcke from March to November of 2003, claiming that before paying claims from Temple, Oxford learned about the potential eligibility issues and had not made a final determination as to Mr. Tremarcke's eligibility when this lawsuit was commenced.

### 2.    The Griffin Claims

Ms. Griffin was an eligible participant under GHI's UWF Plan in January 2003.  From January 14, 2003, to January 17, 2003, Ms. Griffin underwent an incisional hernia repair at Temple.  Temple submitted charges to GHI for Ms. Griffin's hospitalization and surgery in the total amount of $103,753.66, which GHI considered a "high dollar" claim.  The Griffin claim was evaluated by GHI in order to determine the appropriate payment under the UWF Plan

documents.  On July 3, 2003, GHI sent Temple a check in the amount of $12,650.00 for the

Griffin claim, which Temple negotiated shortly thereafter.  GHI's payment notice accompanying

the check indicated, *inter alia*, that the "TOTAL CHARGES" were $103,753.96, that GHI's

"TOTAL PAYMENT" was $12,650.00, and identified the check number for this amount.

Temple claims that GHI is responsible for the remaining $91,103.96 of the Griffin claim and that

MultiPlan is jointly and severally liable for the full unpaid balance.

## II.      DISCUSSION

### A.      The Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of

the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility to inform the

court of the basis for the motion and to identify those portions of the record that demonstrate the

absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving

party's initial burden can be met simply by "pointing out to the district court that there is an

absence of evidence to support the non-moving party's case."  Id. at 325.

After the moving party has met its initial burden, "the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial." FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

**B.     ERISA Preemption**

GHI and Oxford argue that Temple's claims relate to the UWF Plans and, therefore, are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1001 et seq.  "Section 514(a) [of ERISA] was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990). Temple, however, argues that GHI and Oxford are obligated to use the Access Agreement and that to resolve the dispute the Court need only consider the Access Agreement rather than the underlying UWF Plans.  Thus, Temple contends ERISA preemption issues are not implicated here.

There is no dispute as to whether the GHI and Oxford UWF Plans are employee welfare benefit plans within the meaning of ERISA.  See 29 U.S.C. § 1002(1).  The Eleventh Circuit Court of Appeals formulated the prevailing standard for determining whether a "plan" within the meaning of ERISA has been established, stating "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Jones v. Aetna Life Ins. Co., No. 01-2476, 2002 U.S. Dist. LEXIS 15428 at *16 (E.D. Pa. Aug.

14, 2002) (quoting <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1373 (11th Cir. 1982).  Here, undisputed facts show that the GHI and Oxford UWF Plans meet this criteria.  Mr. Tremarcke's and Ms. Griffin's employers each entered into a collective bargaining agreement with the United Service Workers of America which, in turn, through the UWF, entered into contracts with GHI and then Oxford in Mr. Tremarcke's case and with GHI only, in Ms. Griffin's case.

There is no viable dispute as to the legal proposition of whether ERISA preempts state law breach of contract claims that relate to an employee benefit plan. "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 209 (2004).  More specifically, § 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute.  <u>Ingersoll-Rand Co.</u>, 498 U.S. at 138.  It was held recently that ERISA preempts state contract law in a case nearly identical to this one.  <u>Temple Univ. Children's Med. Ctr. v. Group Health, Inc.</u>, 413 F. Supp. 2d 530, 536 (E.D.  Pa. 2006).

### 1.    Tremarcke Claims and ERISA Preemption

Both GHI and Oxford maintain that Mr. Tremarcke's eligibility is at issue and, thus, they argue that interpretation of the underlying UWF Plans is essential to Temple's claim for Mr. Tremarcke's benefits.  According to these Defendants, because Temple's state law claim involves issues of coverage and eligibility pursuant to an employee benefit plan, the Tremarcke claim necessarily is preempted by ERISA.

The Third Circuit Court of Appeals has confirmed that "suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)." <u>Pryzbowski v. U.S. Healthcare, Inc.</u>, 245 F.3d 266, 278 (3d Cir. 2001). Thus, "claims that attack pure eligibility decisions are pre-empted . . . ." <u>Nguyen v. Healthguard of Lancaster, Inc.</u>, 282 F. Supp. 2d 296, 308 (E.D. Pa. 2003) (because plaintiff claimed she had not received a benefit to which she believed she was entitled, "[h]er claim is therefore pre-empted.").

Temple first appears to concede the preemption argument by stating that "[b]ecause GHI contests Tremarcke's eligibility, it may be necessary for this Court to look beyond the MultiPlan Agreement and to the plan documents to determine whether GHI is liable for this claim. For this reason <u>Pascack Valley Hospital</u> [388 F.3d 393 (3d Cir. 2004)][3] suggests that [Temple's] state law claim may be pre-empted by ERISA." Temple's Reply to GHI's Motion for Summary Judgment at 12. However, Temple resists the same analysis in regard to Oxford's contention that Mr. Tremarcke's eligibility issues similarly preempt Temple's state law claim. Rather, in that regard, Temple contends that because Oxford concedes it has not made a final determination as to Mr. Tremarcke's eligibility, it cannot now "cryptically" allude to "potential issues clouding his eligibility." Temple's Reply to Oxford's Motion for Summary Judgment at 4. Temple asserts that "the fact that [Mr.] Tremarcke was ineligible under the Plan at the time it was insured by GHI has no bearing on his entitlement to benefits from Oxford." <u>Id.</u> at 4, n. 2.

---

[3]   The court in <u>Pascack Valley</u> stated "were coverage and eligibility disputed in this case, interpretation of the [ERISA] Plan might form an 'essential part' of the Hospital's claims." <u>Pascack Valley</u>, 388 F.3d at 402.

Oxford responds to this argument by arguing that a change in insurance providers has no impact on the issues regarding Mr. Tremarcke's eligibility. Oxford contends that the plan documents for the policy issued by Oxford have the same eligibility requirement as the plan issued by GHI. Both GHI and Oxford note that their Access Agreements with MultiPlan specifically establish that GHI and Oxford are responsible for making eligibility determinations.[4]

As Temple anticipated, this Court finds that, pursuant to ERISA, Mr. Tremarcke's eligibility issues with GHI preempt Temple's state law claims. Furthermore, because Temple has failed to demonstrate any difference in the eligibility requirements for GHI's UWF Plan and Oxford's UWF Plan, Mr. Tremarcke's eligibility issues also result in ERISA preemption of Temple's claim against Oxford.

### 2.    Griffin Claims and ERISA Preemption

#### a.    Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan

Turning to the Griffin claims, Temple asserts that Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), supports its proposition that its claims are not preempted by ERISA. Temple's reliance on Pascack Valley is unfounded. In Temple Univ. Children's Med. Ctr. v. Group Health, Inc., 413 F. Supp. 2d 530 (E.D. Pa. 2006) (herein "TUCMC"), the court addressed the difference between what the Third

---

[4]    Oxford maintains that Mr. Tremarcke did not suddenly become eligible for benefits when "Oxford came on the risk for the UWF plan . . . ." Tr. of April 11, 2006 Oral Argument at 41-42. When asked by the Court at oral argument how the separate documents governing Oxford's UWF plan affect eligibility, Temple's counsel responded "Again, I don't know. It sets forth its own eligibility criteria terms that are separate from those that were in effect prior when GHI had the plan. Again, I don't know, Oxford has never told us why they've denied it, all they said is there's a cloud over his eligibility." Id. at 84.

Circuit Court of Appeals held in Pascack Valley and the effect of ERISA preemption in a substantively identical contract dispute between Temple University Children's Hospital, GHI, and MultiPlan.  The TUCMC court first distinguished Pascack Valley, explaining that while Pascack Valley involved a hospital suing an employee benefit plan alleging breach of contract for failure to pay for services rendered to one of the plan's beneficiaries, the suit was originally filed in the state court.  Id. at 536-37.  Furthermore, the court explained that in Pascack Valley, when the defendant attempted to remove the action to federal court on the ground that it was preempted by § 514 of ERISA, the Court of Appeals remanded it to the state court since under the well-pleaded complaint rule, the plaintiff had not stated an ERISA claim, and could not state an ERISA claim, because "the plaintiff in that case was not a beneficiary, participant, or fiduciary under ERISA, and it did not have standing to bring such a claim."  Id.  at 537.  Most significantly for present purposes, the TUCMC court highlighted that the "Court of Appeals [in Pascack Valley] did not preclude defendants from asserting ERISA preemption as a complete defense to the action once it was returned to the state court."  Id.

The Pascack Valley court further explained how preemption operates under ERISA:

> Pre-emption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), must be distinguished from complete pre-emption under § 502(a) of ERISA, 29 U.S.C. § 1132(a).  Only the latter permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule.  Under § 514(a), ERISA supersedes state laws that "relate to" an ERISA plan.  29 U.S.C. § 1144(a).  Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.

Pascack Valley, 388 F.3d 393, 398 at n.4 (citing Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000)).

"Pascack Valley merely concerned the issue of removal and remand . . . the Court of Appeals did not hold that the plaintiff stated a valid contract claim or that the claim was not preempted by ERISA." TUCMC, at 537.  Accordingly, despite Temple's protestations here, Pascack Valley does not insulate its claims from the effects of ERISA preemption.  Because the parties here are diverse, there is no issue concerning the Court's subject matter jurisdiction, making the Pascack Valley holding inapposite.  Id.  Therefore, this Court must determine whether the Griffin claim does in fact "relate to" the GHI UWF Plan.

### b.    Participating Providers vs. Non-Participating Providers under GHI's UWF Plan

In order to demonstrate how the Griffin claim "relates" to the ERISA plan and is therefore preempted, GHI argues that the Court cannot resolve Temple's claims concerning Ms. Griffin without directing its inquiry to the GHI UWF Plan because GHI used a pricing scheme for non-participating providers as set out in its UWF Plan, as opposed to their Access Agreement with MultiPlan to pay the Griffin claims.  Temple, however, asserts that it is a participating provider and, therefore, the MultiPlan Access Agreement and Discount Agreement, rather than the UWF Plan, control the dispute.

GHI's UWF Plan defines a participating provider as a provider "who has agreed to accept GHI's scheduled or negotiated rates as payment in full for covered services and is a member of the GHI Participating Provider network(s) that participate under this Policy."   Therefore, Temple argues that, with Temple as a participating provider, the Court need only reference the agreements between Temple and MultiPlan, and between MultiPlan and GHI, to determine if the proper payments were made by GHI.  Temple argues that it met the requirement that it "accept GHI's scheduled or negotiated rates as payment in full for covered services" by entering into the

11

Discount Agreement with MultiPlan that in turn allowed GHI to pay a discounted rate through its Access Agreement with MultiPlan that Temple agreed to accept.  However, in contrast, GHI argues that Temple is a non-participating provider and, therefore, the GHI UWF Plan controls.

The GHI UWF Plan determines the allowed charge for registered bed patients in a non-participating hospital to be the lesser of the following:

(1)     The negotiated rate between GHI and the Hospital of facility;

(2)     The negotiated rate between the Hospital or facility and any network arrangements with which GHI has an agreement;

(3)     The Hospital or facility's published rate for a semi private room;

(4)     For out of area Hospitals and facilities, the Hospital's or facility's published rate for a semi-private room, not to exceed the average charge of GHI Participating Hospitals and skilled nursing facilities for the same or similar services; or

(5)     Charges.

GHI explains that payment of the Griffin claim pursuant to option (2) would require GHI under the Access Agreement with Temple to pay 90% of the $103,753.96 charged by Temple. However, GHI claims that after comparing the charge to GHI's New York-based participating hospitals, the average charge for the service was $12,650.00.  Thus, in accordance with option (4) and GHI's commitment under its UWF Plan to pay the lesser amount from among the five options, GHI sent a check for $12,650.00 to Temple.

In response, Temple argues that because GHI failed to produce a list of participating providers, there is a genuine issue of material fact concerning whether Temple is in fact a participating provider.  Temple argues that it is a participating provider because the Discount Agreement between Temple and MultiPlan states in paragraph 3 that "Plan shall refer to Member Providers in its marketing materials as participating providers." (Temple did not explain that "Plan" refers to MultiPlan, not GHI.)  Temple also argues that it is a participating provider

12

because MultiPlan agreed in the Access Agreement to allow GHI to use MultiPlan's name and logo, and to provide GHI with a directory of MultiPlan facilities and a toll free telephone number for MultiPlan facilities.  Finally, Temple asserts that the fact that GHI's explanation of benefits for Ms. Griffin did not show that she was responsible for any coinsurance, deductibles or excess charges is a "smoking gun," indicating that GHI treated Temple as a participating provider because GHI's UWF Plan states that members would have to pay deductibles, co-insurance, and excess fees to  non-participating providers.

These assertions are not relevant to the question of whether Temple was a participating provider or not.  Addressing similar arguments in <u>TUCMC</u>, the court there concluded:  "There is simply nothing in the agreements before the court or otherwise in the record that supports TUCMC's various arguments that it is a participating provider requiring GHI to pay the charges it seeks in the lawsuit."  <u>TUCMC</u>, at 537.  Likewise, here, Temple also fails to offer evidence that it was a participating provider under GHI's UWF Plan.  Further, Temple does not offer any evidence that reasonably contradicts GHI's contention that its Griffin payment was made in accordance with option (4) of GHI's UWF Plan for payment to non-participating providers.  Therefore, Temple has not shown that it is a participating provider and because the underlying ERISA Plan must be examined in order to determine if GHI properly paid the Griffin claim, Temple's claim is preempted by ERISA.

### c.       GHI's Obligations Under The Access Agreement

GHI argues the Access Agreement, properly interpreted, is a non-exclusive agreement to allow GHI to use MultiPlan's contract rates when it so chooses.  GHI contends, as just discussed, that option (4) of its UWF Plan, rather than the Access Agreement, applies to the payments for

13

the claims arising from Ms. Griffin's care because the MultiPlan Access Agreement was not used.  Temple, however, asserts that in addition to Temple being a Participating Provider, the Access Agreement was mandatory and, therefore, GHI was obligated to utilize it for the Griffin payments, thus making an interpretation of the GHI UWF plan irrelevant and removing the dispute from under the umbrella of ERISA preemption.

GHI's interpretation of its Access Agreement with MultiPlan is based on the following provision in the Preamble of the Access Agreement: "WHEREAS, on behalf of its Participants or Customers, on a *non-exclusive basis*, GHI seeks access to [Multiplan's] Facilities and Contract Rates . . . ."  (emphasis added).  The Access Agreement refers to GHI's *right* to access MultiPlan Contract rates in several provisions.  Temple would somehow have the Court interpret these provisions to mean that "the MultiPlan Network of Providers is available to GHI, as well as other payers," even though this provision is an explanation of GHI's rationale for entering into the Access Agreement with MultiPlan.  Temple also argues that GHI was required under the Access Agreement to give notice if it intended not to use the MultiPlan discount, and that if it failed to do so, GHI would be obligated to pay the MultiPlan rate under the Agreement.  As GHI properly points out, this notice provision only applies to claims that have already been repriced under the Multiplan Access Agreement which states that "[p]ayment is due for savings achieved regarding any repriced claim."

When the court in <u>TUCMC</u> analyzed similar arguments made by Temple's Children's Medical Center against GHI and MultiPlan, the court concluded that "to accept [the Children's Medical Center's] interpretation of GHI's agreement with MultiPlan would not only contradict its plain meaning but would also expose GHI to obligations in excess of what it had agreed to

pay [under the ERISA plan]." TUCMC at 536. Concerning GHI's contention in this case that

utilization of the Access Agreement is not mandatory, there is no reason for the Court here to

come to a conclusion different from the conclusion reached in TUCMC. Therefore, state law

breach of contract claims against GHI arising from the Griffin claim are preempted by ERISA

because of GHI's utilization of pricing under its UWF Plan, rather than under the discount

agreement with MultiPlan.[5]

### C.    Standing under ERISA

The parties agree that even if the claims are preempted under ERISA, if an assignment of

rights to a claim is made by a beneficiary or participant, the holder of the assignment may then

proceed under ERISA. While the Third Circuit Court of Appeals has yet to explicitly find that

an assignment confers standing under ERISA, it has held that "[a]lmost every circuit to have

considered the question has held that a health care provider can assert a claim under § 502(a)[6]

where a beneficiary or participant has assigned to the provider that individual's right to benefits

under the plan . . . ." Pascack Valley, 388 F.3d at 401. Even though Temple has failed to clearly

---

[5]    In reference to the Tremarcke claims, Oxford also claims that its Access Agreement does not require Oxford to utilize it in all cases where an Oxford member receives treatment from a Temple University Hospital facility. Oxford's Access Agreement states that it "has the right to access [MultiPlan's] network . . . ." Temple, however, points out that the Access Agreement also requires that "[i]n order to enable [MultiPlan] to perform its obligations hereunder [Oxford] will send to [MultiPlan] a clear copy of **all bills** received from Providers . . ." (emphasis added), arguing that, therefore, Oxford had no discretion as to whether a bill from a Network Provider should be submitted to MultiPlan for re-pricing. Oxford responds that because it did not utilize the Access Agreement, it was not obligated to send the bills to MultiPlan for repricing. Temple has offered no evidence that Oxford did utilize the Access Agreement.

[6]    Section 502(a) of ERISA allows "a participant or beneficiary" to bring a civil action, inter alia, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Pascack Valley at 400 (quoting 29 U.S.C. § 1132(a)(1)(B)).

assert a cause of action under ERISA in its pleadings, the Court nonetheless will address Temple's contention that it has standing under ERISA.[7]

### 1.    The Anti-Assignment Clauses in the ERISA Plans

GHI and Oxford both argue that based on the plain language of their respective UWF Plans, assignments require the consent of GHI or Oxford.  Even though Temple has produced assignment consent forms signed by Mr. Tremarcke and Ms. Griffin, which purport to assign their respective claims to Temple, GHI and Oxford argue that their consents have not been given in this case and, therefore, Temple does not have standing to sue to enforce any rights under ERISA.

The GHI UWF Plan Group Contract states:

> The health insurance benefits available under this Contract are personal to Members.  They are not assignable.  GHI in its sole discretion and only upon written consent may choose to honor an assignment.  Any assignment without GHI's written consent shall be void.

The GHI Certificate of Health Insurance in its UWF Plan states:

> <u>No Assignment</u>.  You cannot, without GHI's consent, assign any benefits or money due from GHI or any causes of action or rights to appeal benefits or claims determinations to any person, corporation, Hospital, or other organization.  Any assignment by you will be void.  Assignment means the transfer to another person or organization of your right to the services provided, your right to collect from GHI for those services, or your causes of action or rights to appeal benefits or claims

---

[7]    GHI's counsel stated during oral argument on the motions for summary judgment that "the plaintiff would need to actually amend his complaint to ask the Court to allow him to proceed under ERISA, he still hasn't done that."  Tr. at 28.  The Court notes that the pleading of a breach of contract claim in the absence of a properly pleaded ERISA claim can be grounds for dismissal when ERISA preempts the contract claim.  <u>See e.g.</u>, <u>Booz v. Unum Life Ins. Co.</u>, No. 93-2326, 1993 U.S. Dist. LEXIS 13143, *2 (E.D. Pa. 1993) (where plaintiff alleged breach of contract under Pennsylvania law, the court dismissed the claim because "ERISA supersedes the state law.").  But because the parties here have thoroughly addressed the issue of assignment as though a proper claim under ERISA had been pled, the Court will address the issue.

determinations.

Oxford's UWF Plan states in section XI General Provisions:

> This Certificate is not assignable by Group without Our written consent. Any benefits under this Certificate are not assignable by any Member without Our written consent. In addition, [t]his Agreement shall not confer any rights or obligations on third parties except as specifically provided herein.

Temple claims that based on decisions from the Fifth and Eighth Circuits Courts of Appeals, these anti-assignment provisions are not enforceable against healthcare providers. Interpreting a similar anti-assignment provision, the Eighth Circuit Court of Appeals found that the provision "clearly prohibits assignment of 'rights or benefits' under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits." Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994). Similarly, the Fifth Circuit Court of Appeals has held that an anti-assignment clause "should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish." Hermann Hosp. v. MEBA Medical & Ben. Plan, 959 F.2d 569, 575 (5th Cir. 1992).

GHI and Oxford respond by citing Lehigh Valley Hospital v. UAW Local 259 Social Security Dep't, No. 98-4116, 1999 U.S. Dist. LEXIS 12219, at *7 (E.D. Pa. Aug. 10, 1999), which delineates that the First and Ninth Circuits Courts of Appeals have held that an express, anti-assignment provision bars any assignment of rights from plan participants to health care providers under an ERISA plan. See Davidowitz v. Delta Dental Plan of California, 946 F.2d 1476, 1481 (9th Cir. 1991) ("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); City of Hope Nat'l Med. Ctr. v. Health Plus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) (rejecting the distinction in Lutheran Medical Center between

the assignment of rights or benefits and the assignment of causes of action and instead holding

that clear terms in an ERISA plan should be given their natural meaning).   Additionally, as

Oxford points out, the Fifth Circuit Court of Appeals has also subsequently upheld the validity

of anti-assignment clauses.   See <u>LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart</u>

<u>Stores, Inc.</u>, 298 F.3d 348, 352 (5th Cir. 2002) (upholding the validity of an anti-assignment

clause similar to the one in dispute here, and holding that "universally recognized canons of

contract interpretation to the plain wording of the instant anti-assignment clause leads inexorably

to the conclusion that any purported assignment of benefits . . . would be void.")

     The <u>Lehigh Valley</u> court also noted "ERISA's instruction to enforce strictly the terms of

employee benefit plans."   <u>Lehigh Valley</u>, at *7 (citing 29 U.S.C. § 1104(a)(1)(D) (instructing

fiduciaries to administer plans "in accordance with the documents and instruments governing the

plans"); <u>Bennett v. Conrail Matched Savings Plan Administrative Committee</u>, 168 F.3d 671, 679

(3d Cir. 1999) ("ERISA basically requires that fiduciaries comply with the plan as written unless

it is inconsistent with ERISA.")).   Furthermore, the <u>Lehigh Valley</u> court stated that "the position

adopted by the First and Ninth Circuits provides the persuasive rule of law.   Moreover, anti-

assignment provisions are not contrary to ERISA's underlying objectives and policies since such

provisions help to constrain health care costs by encouraging plan participation."   <u>Lehigh Valley</u>,

1999 U.S. Dist. LEXIS 12219 at *8 (citing  <u>Washington Hosp. Ctr. Corp. v. Group</u>

<u>Hospitalization and Med. Services, Inc.</u>, 758 F. Supp. 750, 753-54 (D.D.C. 1991)).   Finally, the

<u>Lehigh Valley</u> court concluded that since the plan at issue in the case "expressly prohibits any

assignment of rights or benefits to which a participant may be entitled, I find that plaintiff lacks

standing to bring suit under ERISA.   Accordingly, plaintiff's complaint will be dismissed."   <u>Id.</u>

Consistent with <u>Lehigh Valley</u>, this Court also finds that the anti-assignment clauses in the contracts in this case are enforceable.[8]   Furthermore, there is no indication in the record that Temple received consent from GHI or Oxford for the assignments presumably signed by Mr. Tremarcke and Ms. Griffin.  Therefore, Temple does not have standing to sue under ERISA.[9]

**D.      Stating a Claim for Breach of Contract**

GHI argues that as a result of utilizing the UWF Plan for the payment of the Griffin claim, and as a result of denying benefits to Mr. Tremarcke based on GHI's determination of ineligibility, GHI never used the Access Agreement with MultiPlan, meaning that the Discount Agreement between MultiPlan and Temple was never triggered.

Temple does not dispute that GHI sent Ms. Griffin a letter stating the payment of

---

[8]    Temple argues without citing any caselaw that because one of GHI's anti-assignment provisions is more restrictive than the other, the clauses should be deemed to be ambiguous and construed against GHI.  One provision prohibits assignment of benefits, while the other also prohibits the assignment of causes of action.  As GHI points out, the distinction between assignment of "causes of action" and assignment of "rights or benefits" was rejected in <u>Lehigh Valley</u>, and Temple's attempt to portray the assignment clauses as ambiguous fails. Temple also argues, again without citing any support in caselaw, that GHI and Oxford consented to the assignment by allowing for direct payment to MultiPlan facilities under their respective Access Agreements.  This argument still fails to demonstrate that any assignment with the written consent (as required by the respective anti-assignment provisions) of GHI or Oxford ever took place.  Temple also tries to explain how Oxford must sue for damages if the anti-assignment clause is held to be breached, rather than having the assignment rescinded, because Oxford's anti-assignment provision does not expressly state that such assignments will be void. During oral argument, however, Oxford cited cases in which courts voided the assignments even without the "magic words" in the anti-assignment clause.  <u>See</u> <u>Vardag v. Motorola, Inc.</u>, 264 F. Supp. 2d 1056, 1059 (S.D. Fla. 2003); <u>Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't</u>, 1999 U.S. Dist. LEXIS 12219 (E.D. Pa. 1999).

[9]    Inasmuch as this Court has determined that Temple does not have standing under ERISA, the Court also denies Temple's request to stay any decision regarding the Tremarcke claim pending the outcome of the New York litigation concerning such claims.  Even if another court were to determine that Mr. Tremarcke was in fact eligible under the GHI UWF Plan, such a decision would not rectify Temple's failure to acquire a valid assignment from Mr. Tremarcke.

$12,650.00 "represents payment in full for the services rendered during your hospitalization," thus indicating that GHI was making payment in accordance with the UWF plan as opposed to the Access Agreement.  GHI also argues that similarly to the Griffin claim, GHI did not elect to use the Access Agreement for the Tremarcke claim and instead determined that Mr. Tremarcke was ineligible under the UWF Plan and, therefore, denied the claim entirely.  Oxford also claims it did not use the Access Agreement for the Tremarcke claim and has offered evidence that on September 15, 2003, MultiPlan sent a Claims Payment Advice to Oxford indicating "As per your request, we are canceling the above case."

Temple has failed to produce any evidence to show that GHI and Oxford used their Access Agreements with MultiPlan.  As already discussed, Temple's argument that the Access Agreements were mandatory fails as well.  Therefore, even if Temple could avoid the ERISA preemption issues and pursue a state law breach claim, it still has failed to produce any evidence that either GHI or Oxford exposed itself to contractual liability to Temple through the Access Agreements GHI and Oxford had with MultiPlan, and in turn through the Discount Agreement MultiPlan had with Temple.  Therefore, even if Temple's claims survived ERISA preemption, Temple's claims fail to state a claim under a state law breach of contract theory.

### E.    MultiPlan

While Temple has correctly identified the fact that ERISA preemption does not apply to any of its claims against MultiPlan, Temple cannot recover against MultiPlan if MultiPlan's Discount Agreement was never triggered.  As MultiPlan argues, if GHI and Oxford have not utilized their Access Agreements with MultiPlan, then MultiPlan cannot be liable to Temple under the Discount Agreement.  Both GHI and Oxford declined to utilize their Access

Agreements in relation to the Tremarcke bills because of the questions of eligibility, and GHI declined to utilize the Access Agreement for the Griffin bills because of its obligation to charge the lowest rate under the options available in its UWF plan.  Therefore, MultiPlan cannot be liable to Temple for these claims under the Discount Agreement.[10]

**III.    CONCLUSION**[11]

For the reasons discussed above, the Court grants the Defendants' motions for summary judgment.  An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[10]    Necessarily, then, although no motion is presently pending before the Court on this point, MultiPlan's third party claims against GHI and Oxford for damages in the event that MultiPlan is found liable to Temple also fail because Temple cannot recover against MultiPlan.

[11]    The Defendants also seek summary judgment based on failure to exhaust administrative remedies, the first filed rule, the prior action pending doctrine, the statute of limitations, and the doctrine of accord and satisfaction.  However, because the issues of ERISA preemption and the alleged assignments are determinative, the Court need not address these other arguments.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TEMPLE UNIVERSITY HOSPITAL, INC., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| GROUP HEALTH, INC.,OXFORD | : | |
| HEALTH PLANS, INC., and | : | |
| MULTIPLAN, INC., | : | |
| Defendants | : | NO. 05-102 |

**<u>ORDER</u>**

Gene E.K. Pratter, J.                                                         July 13, 2006

     AND NOW, this 13th day of July, 2006, upon consideration of Defendants' Motions for

Summary Judgment (Docket Nos. 53 and 65) and the responses and replies thereto, (Docket Nos.

60, 64, 68, and 70), it is hereby ORDERED that Defendants' Motions are granted.

     IT IS FURTHER ORDERED that judgment is entered in the Defendants' favor and

against Plaintiff, and that MultiPlan's third party claims against GHI and Oxford are dismissed.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE